NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210171-U

NO. 4-21-0171

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 19, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 19JA16 |
| v. | ) | |
| Michael G., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court's finding respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 2    Respondent father, Michael G., appeals from the trial court's judgment terminating his parental rights to his daughter, J.G. (born November 9, 2015). On appeal, respondent argues the trial court's finding he was an unfit parent is against the manifest weight of the evidence. We disagree and affirm.

¶ 3                           I. BACKGROUND

¶ 4    Respondent and Heather G.-H. are the minor's biological parents. Heather G.-H.'s parental rights to the minor were also terminated during the proceedings below. She is not, however, a party to this appeal.

¶ 5                    A. Motion to Terminate Parental Rights

¶ 6     In September 2020, the State a filed motion to terminate respondent's parental rights, which it later amended. In its amended motion, the State alleged respondent was an unfit parent as he (1) failed to make reasonable efforts to correct the conditions which were the basis for the removal of the minor from him (750 ILCS 50/1(D)(m)(i) (West 2018)) and (2) failed to make reasonable progress toward the return of the minor to him within any nine-month period following the minor's October 30, 2019, adjudication of neglected, namely November 1, 2019, to August 1, 2020, and June 20, 2020, to March 19, 2021 (750 ILCS 50/1(D)(m)(ii) (West 2018)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                    B. Fitness Hearing

¶ 8     In March 2021, the trial court held a fitness hearing. The following is gleaned from the evidence presented.

¶ 9     In October 2018, the minor was removed from respondent's care based upon the reported use of methamphetamine by respondent and Heather G.-H.

¶ 10     In December 2018, respondent participated in an interview for an integrated assessment. The integrated assessment resulted in a recommendation that respondent complete certain services prior to any reunification with the minor. Those services, along with other tasks, were incorporated into a service plan, which was given to respondent. In the service plan, it was recommended respondent (1) cooperate with DCFS and the agency assigned to monitor the welfare of the minor, (2) attend visitation with the minor, (3) obtain and maintain adequate housing, (4) obtain and maintain employment, (5) complete a substance abuse assessment and any recommended treatment, (6) complete a parenting program, and (7) attend counseling.

¶ 11        In November 2019, the minor's caseworker met with respondent to discuss an allegation that respondent had sexually abused a child. The caseworker testified respondent denied the allegation and indicated he "perceived the stepdaughter was just out to get him."

¶ 12        In December 2019, the minor's caseworker met with respondent to discuss recent criminal charges stemming from the reported incident of sexual abuse. The caseworker testified respondent denied the accusations.

¶ 13        In January 2020, the minor's caseworker evaluated respondent's progress on the recommended services and tasks. Respondent rated satisfactory on all the services and tasks. However, with respect to the recommendation to complete a parenting program, respondent agreed to retake the program because he struggled with retaining the information presented.

¶ 14        In February 2020, the minor's caseworker met with respondent. The caseworker testified respondent reported his adult daughter had come forward stating he had sexually abused her as well.

¶ 15        In March 2020, the minor's caseworker met with respondent. The caseworker testified respondent reported being no longer employed.

¶ 16        In May 2020, an indictment was returned charging respondent with one count of predatory criminal sexual assault of a child and two counts of aggravated criminal sexual abuse. The conduct upon which the charges were based was alleged to have occurred sometime between December 20, 2015, and August 2, 2016. That same month, respondent was incarcerated on the charges.

¶ 17        In June 2020, respondent's visitation with the minor was suspended.

¶ 18        In August 2020, the minor's caseworker evaluated respondent's progress on the recommended services and tasks. Because of respondent's efforts prior to his incarceration,

respondent was rated satisfactory on all the services and tasks. The caseworker added additional recommended services and tasks to the service plan based upon respondent's incarceration. First, it was recommended respondent complete a sex offender evaluation and any recommended treatment. Second, it was recommended respondent complete any available services while in custody and demonstrate a continued interest in the minor's welfare. The minor's caseworker testified respondent was not provided with a copy of the updated service plan "due to his incarceration."

¶ 19 In September 2020, respondent, in his pending criminal case, pleaded guilty to one count of aggravated criminal sexual abuse in exchange for the dismissal of the other charges and was sentenced to five years in prison followed by two years of mandatory supervised release.

¶ 20 In October 2020, the minor's caseworker met with respondent. The caseworker addressed with respondent the recommended services and tasks added to the service plan and reminded him of the need to complete the recommended services and tasks.

¶ 21 In February 2021, the minor's caseworker evaluated respondent's progress on the recommended services and tasks. Respondent rated satisfactory on his substance abuse, parenting, and mental health services. Respondent also rated satisfactory on the recommendation that he complete any available services while in custody and demonstrate a continued interest in the minor's welfare. Respondent rated unsatisfactory on his cooperation, visitation, housing, and employment tasks. Respondent also rated unsatisfactory on the recommendation that he complete a sex offender evaluation and any recommended treatment as he had not completed the evaluation.

¶ 22 Based on the information gleaned from the evidence presented, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motion to terminate parental rights.

¶ 23                           C. Best-Interest Hearing

¶ 24          Immediately following the fitness hearing, the trial court held a best-interest hearing. The following is gleaned from the evidence presented.

¶ 25          The minor, who was five years old at the time of the best-interest hearing, had been placed with her maternal grandmother since she was three years old. The minor's older sister and half-brother also resided with her. The minor was doing well and had a positive relationship with her grandmother and siblings. The minor had no special needs and was up to date on her well-child visits and vaccinations. The grandmother provided the minor with appropriate direction and redirection and assured the minor attended school. The grandmother expressed a willingness to provide the minor with permanency through adoption.

¶ 26          Based on the information gleaned from the evidence presented at the best-interest hearing, as well as the information gleaned from the evidence presented at the fitness hearing, the trial court found it was in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 27          This appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29          On appeal, respondent argues the trial court's finding he was an unfit parent is against the manifest weight of the evidence. The State disagrees.

¶ 30          In a proceeding to terminate a respondent's parental rights, the State must prove unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 31        In this case, the trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). Section 1(D)(m)(ii) states a parent will be considered an "unfit person" if he or she fails to "make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected."

¶ 32        "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17. Reasonable progress exists when the trial court can conclude it will be able to order the child returned to parental custody in the near future. *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 33        In this case, respondent acknowledges a "relevant [nine]-month time period is June 20, 2020[,] to March 19, 2021." See *In re J.L.*, 236 Ill. 2d 329, 341, 924 N.E.2d 961, 968 (2010) ("[T]ime spent in prison does not toll the nine-month period."). The State presented evidence showing respondent, during that period, failed to (1) maintain adequate housing, (2) maintain employment, and (3) complete a sex offender evaluation and any recommended treatment. Respondent, on appeal, places responsibility for his failure to complete a sex offender evaluation and any recommended treatment with the minor's caseworker, noting the caseworker did not provide him with a copy of the updated service plan which included the new task. While the

caseworker did not provide respondent with the updated service plan, the caseworker did speak with respondent about the need to complete the new task. Because respondent, an individual who pleaded guilty to aggravated criminal sexual abuse, was made aware of the need to complete a sex offender evaluation and any recommended treatment, we reject respondent's attempt to place responsibility for his failure to do so with the caseworker. Ultimately, respondent's failure to maintain adequate housing, maintain employment, and complete a sex offender evaluation and any recommended treatment prevented the trial court from any possibility of returning custody of the minor to respondent. We find the trial court's unfitness finding based on respondent's failure to make reasonable progress is not against the manifest weight of the evidence.

¶ 34        As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 35                                III. CONCLUSION

¶ 36        We affirm the trial court's judgment.

¶ 37        Affirmed.